# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Ankush Seghal and Mohit Segal, | |
| Plaintiffs, | Case No. 13 C 8576 |
| v. | |
| Jeh Johnson, *et al.*, | Judge John Robert Blakey |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Ankush Seghal and Mohit Seghal seek to have this Court reverse the Board of Immigration Appeals' June 7, 2013 decision denying the Form I-130 Petition for Alien Relative filed by Ankush, an American citizen, on behalf of her husband Mohit, an Indian citizen. Defendants, principally, officers at the United States Citizenship and Immigration Services ("USCIS") and the United States Department of Homeland Security, seek to affirm the underlying decision.

Form I-130 is meant to assist relatives of American citizens immigrate to the United States. There is no present dispute that Mohit and Ankush entered into a *bona fide* marriage. The Board instead denied the Form I-130 on other grounds, that is, there was substantial and probative evidence that Mohit had entered into a sham marriage with his first wife, Renee Miller—another American citizen who also filed Form I-130s on behalf of Mohit. Under 8 U.S.C. § 1154(c), no Form 1-130 can be approved if the beneficiary has ever sought immigration benefits based on a sham marriage. That is the situation here.

The parties have cross-moved for summary judgment [28] [29]. This Court grants Defendants' motion [28] and denies Plaintiffs' motion [29].

## I.    Legal Standards

### A.    Administrative Standard and Burden of Proof

When an American citizen marries a non-citizen, the couple can file a Form I-130 to petition the government to recognize the non-citizen as a legal permanent resident. The couple has the burden to persuade the government that they intended to establish a life together when they married. *Matter of McKee*, 17 I. & N. Dec. 332, 334-35 (BIA 1980).

Separate from the couple's burden, the government must deny the petition if it finds that the non-citizen ever entered into a sham marriage. All prior marriages can be considered, and if the government finds that any one of them is fraudulent, the beneficiary is forever barred from receiving immigration benefits through marriage. 8 U.S.C. § 1154(c); 8 C.F.R. § 204.2(a)(1)(ii); *see also Ogbolumani v. Napolitano*, 557 F.3d 729, 736 (7th Cir. 2009). That is a statutory bar that cannot be avoided. *Ogbolumani*, 557 F.3d at 733.

The burden initially is on the government. The government must find "substantial and probative evidence" that the marriage was a sham from its inception. 8 C.F.R. § 204.2(a)(1)(ii). The government may look at all relevant evidence, including evidence originating from the agency's prior dealings with the beneficiary. 8 C.F.R. § 204.2(a)(1)(ii); *see also Matter of Tawfik*, 20 I. & N. Dec. 166, 167-68 (BIA 1990). The beneficiary need not have been prosecuted or convicted of

marriage fraud.  8 C.F.R. § 204.2(a)(1)(ii).  If the government identifies substantial and probative evidence of marriage fraud, then the burden shifts to the couple to show otherwise.  *Matter of Kahy*, 19 I. & N. Dec. 803, 806-07 (BIA 1988).

### B.  Standard of Review in this Court

The Administrative Procedure Act governs this Court's review of a final decision by the Board of Immigration Appeals.  5 U.S.C. §§ 702, 704.  Under the Act, this Court's review is limited to the Administrative Record [20] (and, for this reason, this Court finds Defendants' failure to submit a statement of facts to be a harmless mistake, at worst).  5 U.S.C. § 706.  This Court may reverse the Board's decision under limited circumstances, such as where the decision is arbitrary and capricious or without observance of procedure required by law.  5 U.S.C. § 706(2); *Mt. Sinai Hospital Medical Center v. Shalala*, 196 F.3d 703, 708 (7th Cir. 1999). These are demanding standards.  So long as a reasonable mind could find adequate support for the administrative decision, it is not arbitrary or capricious. *Ogbolumani*, 557 F.3d at 733; *Mt. Sinai Hospital Medical Center*, 196 F.3d at 708-09.  The decision need not be compelling or even convincing to be sufficient. *Ogbolumani*, 557 F.3d at 735; *Ghaly v. Immigration and Naturalization Service*, 48 F.3d 1426, 1430-31 (7th Cir. 1995).

## II.  Facts

### A.  The Two Marriages

Mohit is an Indian citizen who entered the United States on September 10, 2000 on a B-2 visitor's visa.  Administrative Record ("AR") at 0097.  This action

concerns Mohit's marriages to two American citizens and corresponding efforts to obtain a green card.

On June 26, 2003, Mohit married Renee Miller (who will be called Renee for clarity because she took Mohit's last name during their marriage). AR at 0185. Later that summer, on August 22, Renee filed a Form I-130 on behalf of Mohit. AR at 0069-70, 0088. On February 2, 2005, Mohit and Renee appeared for an interview in connection with the Form I-130. AR at 0088, 0093. Also while the Form I-130 was pending, the couple submitted extensive evidence of their purported marriage, including TCF Bank statements and two affidavits from Mohit's mother dated February 1, 2005 and January 11, 2006. AR at 0089-90.

USCIS denied the Form I-130 on November 17, 2005. AR at 0088. The notice denying the Form I-130 stated that Renee claimed to be living in Mohit's parent's house until June 3, 2005. AR at 0088, 0093. Yet when an investigator called the house on March 16, 2005, Mohit's mother answered and stated, according to the notice, that "she had no idea where you [Renee] were and did not have a contact number for you." AR at 0088. Renee appealed the denial. AR at 0088. Yet the appeal was rendered moot when Mohit and Renee divorced on July 31, 2008. AR at 0088.

While the appeal from the first Form I-130 was pending, on October 26, 2006, Renee filed a second Form I-130 on behalf of Mohit. AR at 0071-72, 0088. The same day, Mohit filed a corresponding Form I-485 to change his residence status. AR at 0088. In connection with the second Form I-130, on February 12, 2007, Mohit

and Renee appeared for an interview and gave their shared address as 1004 West Euclid Avenue, Arlington Heights, Illinois.  AR at 0088.

Sometime in late 2007 (the exact date is redacted from the Administrative Record), Renee gave birth to a child.  AR at 0089, 0091.  Mohit is not the father.  AR at 0091 n.3, 0185, 0247.

Returning to the second Form I-130, USCIS scheduled a second interview for January 29, 2008, but neither Mohit nor Renee appeared.  AR at 0089.  USCIS issued Requests for Evidence after the first and second interviews, requesting further proof of a genuine marriage.  AR at 0088-89.  USCIS received two letters in response, both purportedly from Mohit (as will be discussed below).  AR at 0089-90.  One letter was signed with the name Mohit; the other was unsigned.  AR at 0089.  Mohit and Renee also re-submitted many of the same documents sent with the first Form I-130.  AR at 0090.  They submitted new documents as well, including photographs with Renee's family in New Mexico.  AR at 0090.

On July 31, 2008, Mohit and Renee divorced.  AR at 0089, 0184-86.  The Judgment for Dissolution of Marriage entered in Illinois state court stated that the parties had separated on or about October 2003.  AR at 0089, 0185.

USCIS scheduled a third interview for December 8, 2008, again, neither Mohit nor Renee appeared.  AR at 0089.  As a result, on or about January 16, 2009, USCIS denied the second Form I-130 as abandoned.  AR at 0089.

On September 9, 2009, Immigration and Customs Enforcement officers interviewed Mohit about his association with Tess Zarrabian and Mohit gave a five-

page written statement. AR at 0091, 0390-95. Ms. Zarrabian was under investigation for certain immigration services she provided. *See* [28] at 3; [29-1] at 3. Mohit signed or initialed every page in his statement. AR at 0091, 0390-95. He also signed a Record of Sworn Statement witnessed by an immigration officer, swearing that he read or had read to him the statement and that it was true and correct. AR at 0091, 0395.

In the sworn statement, Mohit apologized "for putting myself in this situation and breaking the law." AR at 0091. Specifically, Mohit described how he entered into a fraudulent marriage with Renee to obtain permanent resident status. AR at 0091. Mohit first met Renee through Ms. Zarrabian at Ms. Zarrabian's office. AR at 0091. Mohit initially believed Ms. Zarrabian was a lawyer although she later said she was not. AR at 0091. Mohit paid Renee $6,000 and Ms. Zarrabian thousands of dollars as well. AR at 0092.

Mohit explained the steps he and Renee took to create the false impression of a legitimate marriage to USCIS. AR at 0092. Many of the documents the two submitted were false. AR at 0092. For example: (1) a woman from Ms. Zarrabian's office took Mohit and Renee to a TCF Bank to open joint bank accounts; (2) Ms. Zarrabian took photographs of Mohit and Renee wearing different clothes at different locations to create the appearance that the pictures were taken on different days; and (3) after the February 12, 2007 interview, when USCIS requested more photos of the couple, Mohit and Renee flew to New Mexico to take pictures with Renee's family. AR at 0092.

Mohit also recounted that he and his parents visited Renee in January 2008, after the birth of her child, and offered Renee $500 to identify Mohit as the father. AR at 0092.  Renee declined the offer, so Ms. Zarrabian told Mohit to tell immigration officials that Renee had an affair.  AR at 0092.

On January 12, 2010, Mohit married Ankush.  AR at 187.  On February 23, 2010, Ankush filed the third Form I-130 on behalf of Mohit.  AR at 0087, 0097-98.

On March 11, 2011, during the pendency of the third Form I-130, Renee sent a handwritten letter to USCIS about her marriage with Mohit.  AR at 0090-91, 0380-83.  Why Renee sent this letter is not answered by the Administrative Record.  *See* [29-1] at 4.  Renee confirmed that Ms. Zarrabian, who she also initially believed was a lawyer, arranged for her marriage with Mohit on June 26, 2003 so that Mohit could obtain a green card.  AR at 0090.  In return, Renee would receive $5,000.  AR at 0091.  Ms. Zarrabian gave Renee an envelope containing $2,500 the day of the marriage and promised Renee the remaining $2,500 once Mohit received his green card.  AR at 0091.  Renee also confirmed that Mohit and his parents visited Renee after she gave birth and asked her to identify Mohit as the father on the birth certificate.  AR at 0091.  Renee said no.  AR at 0091.

On March 15, 2011, USCIS interviewed Mohit and Ankush in connection with the third Form I-130.  AR at 0092, 0196-206.  In another sworn statement, Mohit repudiated his earlier September 9, 2009 sworn statement.  AR at 0092. Contrary to his prior statement, Mohit now said that his marriage to Renee was genuine and valid, and that Ms. Zarrabian was just a form preparer.  AR at 0092.

Mohit said Immigration and Customs Enforcement officers had typed up his September 9, 2009 statement, did not allow him to read the statement before signing it and mistreated him.  AR at 0092.

Also in the March 15, 2011 statement, Mohit denied sending the two letters USCIS received in response to their February 12, 2007 and January 29, 2008 Requests for Evidence.  AR at 0089, 0091, 0095.  Mohit also claimed that the signature on one of the letters was not his (recall that the second letter was unsigned).  AR at 0091.  Mohit further denied the veracity of many other documents USCIS received in connection with the first and second Form I-130s.  For example, Mohit claimed that the February 1, 2005 and January 11, 2006 affidavits from his mother were false documents not actually signed by her.  AR at 0091.

### B.     Administrative Record

Based on this factual record, USCIS and the Board of Immigration Appeals denied the February 23, 2010 Form I-130 at every stage in the administrative process.

#### 1.     Notice of Intent to Deny

On March 25, 2011, the Field Office Director issued a nine-page Notice of Intent to Deny Petition for Alien Relative ("Notice of Intent to Deny") notifying Ankush of USCIS's intention to deny the February 23, 2010 Form I-130.  AR at 0087.  The Director reviewed the record, recounted the preceding factual record (as shown by the citations to the Notice of Intent to Deny, from AR 0087 to 0095) and stated the applicable law.  *See generally* AR at 0087-95.

The Director concluded that, while the record contained substantial evidence of a marital union, that evidence was impossible to reconcile with Mohit's September 9, 2009 sworn statement and Renee's March 11, 2011 letter. AR at 0090.

First, Mohit gave inconsistent testimony about when he lived with Renee. The Director reviewed Mohit's March 15, 2011 sworn statement and observed that Mohit had difficulty describing the chronology of his marriage to Renee. AR at 0092. However, Mohit was clear that he lived with his parents throughout the time he was married to Renee. AR at 0092. Mohit also was clear that Renee lived with him and his parents for just six non-consecutive months spread out over 2003 and 2004 and that the couple did not live together after 2004. AR at 0092-93. Mohit said that he and Renee lived together at two addresses: (1) 131 Catalpa Avenue, Chicago, Illinois and (2) 7709 North Kolmar Avenue, Skokie, Illinois. AR at 0092 & n.5. When asked if he previously had told the government that he had lived with Renee in 2005, Mohit answered: "No." AR at 0093.

By comparison, on February 2, 2005, when first interviewed by USCIS, Mohit and Renee claimed to be living together. AR at 0093. Moreover, on October 26, 2006 and February 12, 2007, when Mohit filed a Form I-485 and Mohit and Renee appeared for an interview, respectively, Mohit and Renee claimed they were living together in Arlington Heights. AR at 0094.

Second, much of the evidence Plaintiffs submitted to USCIS post-dated Mohit's separation with Renee—which occurred either in October 2003 (according to the Judgment for Dissolution of Marriage) or 2004 (according to Mohit's March 15,

2011 testimony)—and falsely represented that the two lived together. AR at 0094. This included:

- rent receipts from July to December 2003 from Mohit's mother;

- a state ID for Renee issued January 11, 2005 and listing her address as 7709 North Kolmar Avenue, Skokie, Illinois, which is where Mohit's family resided;

- a cell phone bill due February 25, 2007 for both Mohit and Renee and listing their address as 1004 West Euclid Avenue, Arlington Heights, Illinois; and

- copies of a driver's license for Mohit and another state ID for Renee both issued February 9, 2007 and listing their address as 1004 West Euclid Avenue, Arlington Heights, Illinois.

AR at 0089-90, 0092 & n.5, 0094.

Third, the Director found that the chronological contradictions disappeared by assuming Mohit's September 9, 2009 sworn statement and Renee's March 11, 2011 letter to be true—and not Mohit's March 15, 2011 sworn statement. AR at 0094. The Director emphasized that, not only did Mohit's first statement and Renee's letter agree with one another, but they also explained the other evidence in the record. AR at 0094. For example, in the September 9, 2009 sworn statement, Mohit explained that Ms. Zarrabian said she would produce the two letters sent in response to the government's Requests for Evidence—the ones Mohit later said were not written by him. AR at 0094-95.

The Director concluded by informing Plaintiffs of their right to submit countervailing evidence in support of the February 23, 2010 Form I-130. AR at 0095.

### 2.      Decision on Petition for Alien Relative

On May 9, 2011, after receiving a response from Plaintiffs, the Field Office Director issued a six-page Decision on Petition for Alien Relative ("Decision on Petition") denying the February 23, 2010 Form I-130. AR at 0002-07. The Director concluded that the record contained "substantial and probative evidence" that Mohit's marriage to Renee "was a sham intended to evade the immigration laws of the United States." AR at 0003; *see also* AR at 0007.

In reaching that decision, the Director considered the brief and supplemental evidence Plaintiffs submitted in response to the March 25, 2011 Notice of Intent to Deny. AR at 0003, 0005, 0147-66. Plaintiffs principally argued that: (1) Mohit's September 9, 2009 sworn statement should be given no weight because Immigration and Customs Enforcement officials coerced Mohit into signing the statement without reviewing it; and (2) USCIS had not met its burden to show that Mohit and Renee had entered into a sham marriage. AR at 0003.

The Director rejected both arguments. He found nothing in the record to support Plaintiffs' contention that immigration officials coerced Mohit. AR at 0003, 0006 (citing *Matter of Luis-Rodriguez*, 22 I. & N. Dec. 747, 759 n.5 (BIA 1999)). The Director also noted that Mohit signed or initialed every page, thereby attesting that Mohit had read and agreed with every page. AR at 0003.

As for the second argument, the Director echoed the Notice of Intent to Deny: while Plaintiffs had indeed submitted substantial evidence of a valid marriage between Mohit and Renee, much of that evidence was: (1) inconsistent with Mohit's

September 9, 2009 sworn statement and Renee's March 11, 2011 letter; (2) manufactured after Mohit and Renee separated in October 2003 or 2004; or (3) repudiated by Mohit. AR at 0004-05. The Director further found that Plaintiffs had failed to explain the origin of the allegedly false evidence. AR at 0004. Nor did Plaintiffs explain the numerous inconsistences in the record (which marshal against him). AR at 0004. In particular, the Director found unpersuasive Mohit's claim that he could not recall when he lived with Renee; the questions to Mohit about when he lived with Renee were framed in terms of residences and years, not specific dates. AR at 0006.

Plaintiffs argued that USCIS must have told Renee what to include in her March 11, 2011 letter. AR at 0004. Mohit also submitted an affidavit denying the accuracy of Renee's March 11, 2011 letter and stating that Renee only sent the letter to hurt him. AR at 0006, 0147-50. The Director rejected both arguments, explaining that there was no evidence that USCIS told Renee what to include in her letter and that Mohit stated on March 15, 2011 that he did not have a hostile relationship with Renee after their divorce. AR at 0004.

### 3.    Board of Immigration Appeals Decision

Plaintiffs appealed the May 9, 2011 Decision on Petition. The Board of Immigration Appeals denied the appeal on June 7, 2013 in a two-page decision that incorporated by reference the May 9, 2011 Decision on Petition. AR at 0053-54.

On appeal, Plaintiffs principally argued that Mohit's September 9, 2009 sworn statement was produced under duress and signed only because Mohit was in

pain following a recent car accident. AR at 0053. The Board reiterated that Mohit signed or initialed every page of his September 9, 2009 statement and that no evidence supported his argument that the statement was produced under duress. AR at 0053. The Board further found that Renee's March 11, 2011 letter corroborated the information in Mohit's earlier statement. AR at 0053.

Having addressed this argument, the Board concluded that the evidence of a *bona fide* marriage between Mohit and Renee was insufficient to overcome Mohit's September 9, 2009 sworn statement and Renee's March 11, 2011 letter. AR at 0053.

### 4. Denial of Reconsideration

On July 8, 2013, Plaintiffs moved to have the Board of Immigration Appeals reconsider its June 7, 2013 decision. AR at 0037-50. The Board denied the motion in a two-page decision issued on April 10, 2014, after this lawsuit was commenced. AR at 0016-17.

The Board found that Plaintiffs had merely recast arguments already made, which was not an appropriate ground for a motion for reconsideration. AR at 0016. The Board in particular rejected Plaintiffs' argument that the Director erred by not disclosing a copy of Renee's March 11, 2011 letter. AR at 0016. The Board explained that it had reviewed the full letter which was in the record; and that no legal error was committed because the text of the letter was fully quoted in the March 25, 2011 Notice of Intent to Deny. AR at 0016-17. That was enough under Seventh Circuit law. AR at 0017 (citing *Ghaly v. Immigration and Naturalization Service*, 48 F.3d 1426, 1435 (7th Cir. 1995)).

## III.    Analysis

The sole issue in this case is whether the marriage between Mohit and Renee was a fraud.  If so, then Mohit cannot receive immigration benefits through his marriage with Ankush, even if that later marriage is *bona fide*.  *See* 8 U.S.C. § 1154(c).  Here, Plaintiffs assert that two categories of errors under 5 U.S.C. § 706(2) were made: (1) the government departed from established policies by failing to disclose the March 11, 2011 letter from Renee; and (2) the Board of Immigration Appeals' June 7, 2013 decision was arbitrary and capricious because it lacked adequate support for the conclusion that Mohit had entered into a fraudulent marriage.  This Court addresses each argument in turn.

### A.    Procedural Violation

The Director quoted the entire March 11, 2011 letter from Renee in the March 25, 2011 Notice of Intent to Deny but did not attach the actual statement or otherwise provide Plaintiffs with the statement until this litigation.  *Compare* 3/25/11 Notice of Intent to Deny, AR at 0090-91, *with* 3/11/11 Renee Letter, AR at 0380-83.  Plaintiffs argue that Defendants violated their statutory obligation under 8 C.F.R. § 103.2(b)(16)(ii) by failing to disclose the letter to them.  [29-1] at 10-12; [31] at 4.  Under the right circumstances, a procedural violation can warrant setting aside the government's decision.  5 U.S.C. § 706(2)(D); *see also Mt. Sinai Hospital Medical Center*, 196 F.3d at 708; *Ghaly*, 48 F.3d at 1431.

Plaintiffs are correct that the administrative regulations require the "determination of statutory eligibility … be based only on information contained in

the record of proceeding which is disclosed to the applicant or petitioner," unless that information is classified. 8 C.F.R. § 103.2(b)(16)(ii). The Seventh Circuit has interpreted this language to mean, however, that the government is not required to provide Plaintiffs with an opportunity to view each and every statement. *Ghaly*, 48 F.3d at 1434-35. Instead, the Court in *Ghaly* found that the plaintiffs there had sufficient notice because the government summarized the relevant statement in the notice of intent to revoke. *Id.* at 1434-35.

Here, of course, quoting Renee's entire March 11, 2011 letter in the Notice of Intent to Deny provides more information than just the summary provided in *Ghaly*. Indeed, the Board of Immigration Appeals considered and rejected this very argument based on *Ghaly*. AR at 0017. Perhaps in an ideal world, it would have been better had the government disclosed a copy of the letter itself to Plaintiffs, *see Ghaly*, 48 F.3d at 1436-37 (Posner, J., concurring), but the government nonetheless satisfied its obligations under 8 C.F.R. § 103.2(b)(16)(ii).

## B. Arbitrary and Capricious Decision

Plaintiffs face a high hurdle when arguing that the Board of Immigration Appeals made an arbitrary and capricious decision, lacking adequate evidence to find that the marriage between Mohit and Renee was a sham. The role of this Court is not to re-weigh the administrative record anew. *Ghaly*, 48 F.3d at 1430-31, 1433; *see also Ogbolumani*, 557 F.3d at 733. Increasing the burden for Plaintiffs, the Board only had to find "substantial and probative evidence" of marriage fraud.

8 C.F.R. § 204.2(a)(1)(ii).  This is evidence a reasonable mind would find adequate to support a conclusion.  *Ghaly*, 48 F.3d at 1431.

The Seventh Circuit has repeatedly affirmed administrative decisions finding substantial and probative evidence of marriage fraud where just one of the parties to the marriage admitted to the fraud, even if that person later backtracked from the admission.  *Ogbolumani*, 557 F.3d 729; *Ghaly*, 48 F.3d 1426; *see also Matter of Kahy*, 19 I. & N. Dec. 803.  In particular, two controlling cases from the Seventh Circuit guide this Court's decision.

First, in *Ogbolumani*, the Court affirmed denial of a Form I-130 submitted by Lacey Ogbolumani (an American citizen) for her husband David Ogbolumani (a Nigerian citizen) because David had entered into a fraudulent marriage with his first wife, Jamiler Cooper (an American citizen).  557 F.3d at 731, 736.  Jamiler had submitted an earlier Form I-130 on behalf of David and during the subsequent government investigation, Jamiler and David admitted that their marriage was a fraud.  *Id.* at 731-32.  Jamiler said she agreed to marry David in exchange for money to pay for school.  *Id.* at 732.  David did not explicitly concede that the marriage was a fraud, but he may as well have.  He told investigators:

> I felt I had no other way to obtain my immigration benefits.  I did what I felt I had to do.  You are intelligent investigators and basically have my head on a platter.  However, I can't bring myself to "mouth" the words that will destroy any remaining hope I may have.

*Id.* at 732-33.  Jamiler ultimately withdrew her Form I-130.  *Id.* at 732.

In connection with the second Form I-130 filed by Lacey, USCIS sent David and Lacey a Notice of Intent to Deny based on the earlier evidence of marriage

fraud. *Id.* at 732. In response, as here, Lacey supplemented the record with substantial evidence that the first marriage was legitimate. *Id.* at 732. Similar to the evidence sent here, Lacey sent: (1) two leases that David and Jamiler had signed together, (2) electric bills and car insurance cards in both their names and (3) a letter from the bank certifying that David and Jamiler had opened a joint checking account. *Id.* at 732. Lacey later added an affidavit from David stating that he was genuinely in love with Jamiler when they married. *Id.* at 732. David, however, did not deny paying for Jamiler's education. *Id.* The additional evidence of a *bona fide* marriage thus was insufficient, so the Director denied the Form I-130 and the Board of Immigration Appeals and district court agreed. *Id.* at 732.

The Seventh Circuit affirmed, finding that the most damaging evidence came from David and Jamiler themselves. *Id.* at 732-34. While David did try to backtrack from his prior admissions, he never expressly denied them. *Id.* at 734. Moreover, David's initial statements were corroborated by the statement from Jamiler (as well as another statement from her sister-in-law). *Id.*

Second, in *Ghaly*, the Seventh Circuit found that the government had correctly denied a visa petition filed by the University of Illinois at Chicago (the employer) on behalf of their employee, Dr. Ramsis Ghaly (an Egyptian citizen), based on Dr. Ghaly's fraudulent marriage. 48 F.3d at 1427. Years earlier, in July 1985, Dr. Ghaly married Ann Wager (an American Citizen) and Ms. Wagner petitioned for a visa for Dr. Ghaly. *Id.* Ms. Wagner withdrew the petition and the marriage ended in a divorce in January 1986. *Id.* at 1427-28. Also in January

1986, Immigration and Naturalization Service agents interviewed Ms. Wagner who signed a statement stating that she married Dr. Ghaly for a $2,000 fee and that the two were introduced through a man named Thomas Fix. *Id.*

Almost nine years later, in January 1993 and during the proceedings for the visa petition, the University responded to this evidence by submitting a notarized letter from Ms. Wagner dated October 8, 1992. *Id.* at 1428. Ms. Wagner stated that she and Dr. Ghaly married because they thought they were in love and the marriage failed because of cultural differences. *Id.* at 1428. The University also submitted affidavits from Dr. Ghaly and Mr. Fix. *Id.* at 1429. Dr. Ghaly admitted that his immigration status was a consideration in his decision to marry Ms. Wagner but further explained that he had not promised to pay Ms. Wagner and that the couple did not marry for any fraudulent purpose. *Id.* Mr. Fix asserted that the marriage was based on love. *Id.*

The government weighed this evidence and concluded that the rebuttal evidence was not sufficient to overcome the prior admission by Ms. Wagner. *Id.* at 1429. The Seventh Circuit agreed. While Dr. Ghaly denied that he paid Ms. Wagner for marrying him, neither Ms. Wagner nor Mr. Fix explicitly denied the fee arrangement in their affidavits. *Id.* at 1432. The Seventh Circuit found that the government was entitled to (1) discount these rebuttal affidavits because all three individuals were purportedly involved in a fraudulent marriage scheme, which undermined their credibility; and (2) give more weight to Ms. Wagner's testimony in 1986, which was temporally closer to the marriage than Dr. Ghaly's conflicting

affidavit and the other evidence. *Id.* at 1432-33. These same two points are equally applicable here.

The record before the Board of Immigration Appeals in this case supplies even more compelling evidence of marriage fraud than in *Ogbolumani* and *Ghaly*. Unlike in those cases, here, both parties to the marriage explicitly have admitted that their marriage was a sham. In a September 9, 2009 sworn statement, Mohit explained the marriage fraud scheme, including how he and Renee manufactured evidence of a legitimate marriage to send to USCIS. AR at 0390-95. In a March 11, 2011 letter, Renee confirmed that the marriage was a sham and corroborated much of the specific factual detail from Mohit's September 9, 2009 sworn statement. AR at 0380-83. Renee stated that in exchange for $5,000, she agreed to marry Mohit so that Mohit could obtain a green card. AR at 0090-91, 0381-82.

Plaintiffs attempt to discredit this evidence, but that argument does not take them far. Plaintiffs argue that Mohit's September 9, 2009 statement was the product of duress, that is, immigration officials coerced Mohit into making false admissions and Mohit was in pain as a result of a recent car accident. [29-1] at 9; [31] at 3.

Yet the Director and then the Board of Immigration Appeals both found nothing in the record substantiating those allegations. AR at 0003, 0053. Mohit signed or initialed every page, attesting that he had read and agreed with every page, and further swore that the statement was true and correct. AR at 0003, 0053. Even setting aside this absence of evidence, the record corroborated the statement.

The Director and the Board of Immigration Appeals found that the chronological contradictions in the record disappeared by finding Mohit's September 9, 2009 sworn statement to be true—and not his later March 15, 2011 statement. AR at 0003, 0006, 0053, 0094-95. The Board added that Renee's March 11, 2011 letter also corroborated the factual information from Mohit's first sworn statement. AR at 0053.

Plaintiffs also argue that the Board gave Renee's letter too much weight because it was not sworn and was otherwise unreliable, for example, coming three years after the marriage ended. [29-1] at 8-9; [31] at 2. Hearsay is admissible in administrative proceedings, however, so long as the evidence is probative and its use is not fundamentally unfair. *Ogbolumani*, 557 F.3d at 734; *see also Pouhova v. Holder*, 726 F.3d 1007, 1011 (7th Cir. 2013); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004).

*Ogbolumani* shows that both conditions are met here. In that case, Jamiler's (the ex-wife) statement not only was unsworn but also the Board of Immigration Appeals only considered a summary of the statement written by investigators—not the statement itself. 557 F.3d at 734. Despite the inherent risks associated with unsworn statements and summaries, the Seventh Circuit found that the Board properly considered the statement. *Id.* Renee's letter is even more reliable in this case, and the Board of Immigration Appeals considered the letter itself and not just a summary. AR at 0016-17.

Relatedly, Plaintiffs argue that the Director and Board of Immigration Appeals mischaracterized Renee's letter as sworn. [29-1] at 10; [31] at 2. They are correct that the letter was not sworn and that a sworn letter would have further bolstered the Board's decision, but that mistake was immaterial. The Board had access to the original letter, *see* AR at 0016-17, and the mischaracterization of the letter is harmless given the overall weight of the evidence showing a fraudulent marriage between Mohit and Renee. *See Ogbolumani*, 557 F.3d at 734.

The admissions by Mohit and Renee alone—even if they could somehow be discredited in some way—supply a sufficient basis to uphold the underlying decision. And there is more. Much of the evidence submitted by Plaintiffs to USCIS was rendered false by Mohit's sworn statement that he and Renee separated in 2004. AR at 0004-05, 0053, 0089-90, 0092 & n.5, 0094. The July 31, 2008 Judgment for Dissolution of Marriage indicated that Mohit and Renee separated even earlier, in October 2003. AR at 0185. Plaintiffs also claimed that other evidence of the purported marriage between Mohit and Renee was false, such as two letters and affidavits from Mohit's mother, yet failed to explain the origin of this allegedly false evidence. AR at 0004-05.

At bottom, this Court cannot conclude that the Board of Immigration Appeals made an arbitrary and capricious decision when the record contained not only admissions by both parties to the marriage that it was a sham but also a timeline of events consistent only with the conclusion that there was marriage fraud.[1]

---

[1] Plaintiffs also argue that the government engaged in misconduct when, in a December 2, 2011 letter, they misrepresented that they would forward Plaintiffs' appeal of the May 9,

**IV.    Conclusion**

Defendants' motion for summary judgment [28] is granted and Plaintiffs' cross-motion for summary judgment [29] is denied.

Dated: May 14, 2015

Entered:

_____
John Robert Blakey
United States District Judge

---

2011 Decision on Petition.  [29-1] at 12-13; [31] at 4.  That did not occur until early 2013. The Board of Immigration Appeals acknowledged that the letter was not artfully worded. AR at 0017.  But the Board nonetheless found that the argument did not deny the fact that Mohit and Renee had entered into a fraudulent marriage.  AR at 0017.  This Court agrees.